(Decided 20th March, 1872.)

RICHARD DALLAS ASHTON *vs.* WILLIAM ASHTON, and others.

*Motion to dismiss the Appeal, overruled—Appeal from a Court of Equity—Article 5, Sections 20, 26, 27 of the Code—Act of 1861, Ch. 33—Multifariousness.*

A bill was filed alleging the insufficiency of the personal estate of a testator to pay his debts and certain specific legacies, and that it would be greatly to the advantage of all parties interested, that certain real estate, devised to the defendants, should be sold. The bill prayed that a decree might be passed accordingly. One of the defendants was an infant who answered by a guardian *ad litem* duly appointed. On the 23d of November, 1855, a decree was passed for the sale of the real estate; the sale was made and duly reported and confirmed; and the proceeds of sale

were distributed by audits which were finally ratified.    The infant defendant on the 10th of February, 1870, a few months after his arrival at age, filed his petition under oath, for an appeal, alleging that the decree " was obtained by surprise and fraud which had only come to his knowledge since the 28th of December, 1869." On a motion to dismiss the appeal upon the ground that it was not taken within the time limited by the Code for appeals in equity, it was HELD:

That the motion to dismiss must be overruled, the appellant having alleged on oath, that the decree was obtained by fraud, and that he had no knowledge of it until within less than two months before the appeal was prayed.

Upon an appeal by a defendant in an Equity suit, no objection will be heard in the Court of Appeals, to the jurisdiction of the Court below, unless it appears by the record that such objection was made in said Court.

On an appeal from a Court of Equity, no objection to the admissibility of evidence, or to the sufficiency of the averments of the bill or petition, or to any account stated and reported in the case will be heard in the Court of Appeals, unless it appears by the record that such objection was made by exceptions filed in the Court from which the appeal was taken.

The objection of multifariousness will not be entertained, when raised for the first time at the hearing of the cause in the Court of Appeals.

A bill which asks for the sale of the life estate and remainder in the same land, upon the ground that it would be greatly to the advantage of all concerned, " that the whole should be sold, and the proceeds distributed under the direction of the Court, amongst the parties entitled," is certainly not multifarious to the extent of creating any serious embarrassment in the nature and character of the decree to be passed.

APPEAL from the Circuit Court for Howard County, in Equity.

The bill of complaint in this case filed by Sarah Street, and others, appellees, against the appellant and the other appellee, William Ashton, charged that Richard Ashton died on or about the 1st of November, 1854, possessed of a large real and personal estate, and by his last will which was admitted to probate on the 14th of November, 1854, after devising certain real estate to his son John, devised and bequeathed one-half of the residue of his real estate and all of his personal

32                    v. 35

estate to his son William Ashton, during his natural life, charged with the payment of certain legacies, amounting to $1,400, to the complainants, and then devised the rest and residue of his estate real and personal, to his grandson, the appellant, the son of William; that John and William Ashton were appointed executors; that John renounced the executorship under the will, and letters testamentary on the estate were granted to William who entered upon the administration thereof.

The bill further charged that the personal estate of the testator was insufficient for the payment of his debts, and of the aforesaid legacies; and that it would be greatly to the advantage of all parties in interest, that the whole farm should be sold. Process was prayed in the usual form against William Ashton and the appellant, who was stated to be an infant. Under a commission duly issued for the purpose, the answer of the infant defendant was taken by a guardian *ad litem*, and returned. The other defendant answered admitting the allegations of the bill, and consenting to a decree as prayed. A commission to take testimony was issued, and testimony was taken thereunder and returned. The Court thereupon passed a decree, dated the 23d of November, 1855, for the sale of the entire property; the sale was made and duly reported and ratified; and the proceeds of sale were distributed by audits which were finally ratified on the 5th of August, 1864.

On the 11th of August, 1869, the appellant filed a petition in the cause, suggesting that he had recently been informed that during his minority, a decree had been passed for the sale of the property, to which he was entitled under his grandfather's will, and the property had been sold for a nominal sum, greatly below its value. The petitioner disclaimed all knowledge of the proceedings, except as shown by the docket entries, and stated that he had been informed by the clerk of the Court that the papers could not be found in his office. The petition prayed for an order requiring the clerk to bring the papers into Court by an early day. The order was accord-

ingly passed, and the papers were found and produced. On the 10th of February, 1870, the appellant filed another petition which was under oath, alleging that the decree was obtained by surprise and fraud, which had only come to his knowledge since the 28th of December, 1869; that the land was susceptible of advantageous division; and that the testator had left ample personal estate to pay all his debts, and the legacies to the complainants, without resort to the real estate; the petitioner prayed an appeal from said decree and all orders in the cause. With this petition was filed an affidavit in which two persons deposed that the land was worth in fee simple over $12,000 in 1855; and was capable of division into two equal parts without loss or injury.

The cause was argued before BARTOL, C. J., STEWART, BRENT, ALVEY and ROBINSON, J.

*Henry W. Archer,* for the appellant.

The complainants had no standing in Court as against the appellant; they had no claims against him, nor any title to or interest in the estate devised to him by Richard Ashton, which would enable them to maintain a bill or obtain a decree for its sale; their lien for their legacies extended no further than the life-estate of William, and he alone should have been made defendant. *Act of* 1785, *ch.* 72, *sec.* 12; *Barroll's Chan. Prac.,* 483, 484; *Boone vs. Boone,* 3 *Md. Ch. Dec.,* 497.

The bill is multifarious in seeking an enforcement of the liens of the complainants against William, and a partition or sale for partition against the appellant. *Story's Eq. Pl.,* secs. 271, 275; *White vs. White,* 5 *Gill,* 359; *Gibbs vs. Clagett,* 2 *Gill & John.,* 14.

It was immaterial to the complainants whether it was for the interest of the infant or not that his land should be sold; they were not his guardians, and their lien on William's land was not of such a character as to substitute them to any rights he might have had to demand partition or sale. *Act of* 1818, *ch.* 133, *sec.* 2; *Act of* 1785, *ch.* 72.

Nothing was due to the complainants when their bill was filed; .the testator had only been dead four months, and none of the legacies were payable until the end of the year; some of them not until the legatees, then minors, should come of age. *White vs. Donnell & Howard*, 3 *Md. Ch. Dec.*, 526.

While it was alleged in the bill that the personal estate was not sufficient for the payment of debts and legacies, there was no proof of the fact; the certificate of the Register of Wills to that effect was not evidence; if it were, it was insufficient, and the fact was otherwise. *Cornish vs. Wilson*, 6 *Gill*, 299; *Dugan vs. Hollins*, 4 *Md. Ch. Dec.*, 139.

*William Schley*, for the appellees.

This appeal should be dismissed. The decree having been passed in 1855, an appeal, taken in 1870, cannot be sustained, *Art.* 5 *of the Code, secs.* 20–29, *unless* it be sanctioned by the proviso of sec. 20.

But that proviso does not apply to a case of this description. Fraud and surprise in the obtention of the decree, implies improper action on the part of the complainants or their solicitor, not an irregularity in the proceedings, nor an error of the Judge. It imports into the case *extrinsic* misconduct; such as deception, trick, sharp practice. No error apparent on the face of the decree appears in this case. Not even any irregularity. Fraud or error of judgment, on the part of witnesses; fraud in the execution of a decree, or fraud on the part of a purchaser, does not constitute a case of fraud or surprise, within the scope of said proviso. The appellant was represented by a guardian *ad litem*, who must be presumed to have had notice of all the proceedings in the cause. Even if the petition filed by the appellant can be regarded, the suggestions look rather to the witnesses and the purchaser than to the complainants.

The only remedy of the appellant, if he has any case for relief, is by bill of review, or by bill in the nature of a bill of review, if filed within the time limited by law. *Hollings-*

*worth vs. McDonald,* 2 *Harr., & J.,* 237 ; *Burch vs. Scott,* 1 *G. & J.,* 425 ; *Pfeltz vs. Pfeltz,* 1 *Md. Ch. Dec.,* 455 ; *Ducker vs. Belt,* 3 *Md., Ch. Dec.,* 13 ; *Stewart vs. Beard,* 3 *Md. Ch. Dec.,* 227.

But, if the case be within said proviso, there is no open question upon the appeal. There is no exception to the jurisdiction of the Court. *Code, Art.* 16, *sec.* 71 ; *Code, Art.* 5, *sec.* 27. There is no exception to evidence. *Code, Art.* 5, *sec.* 26. No exception to the report of sale, which was formally ratified. No exception to the audit, which was duly ratified, and the presumption is that the money was applied accordingly.

Hence, upon the record, even if the case is to be regarded before the Court on appeal, there is not a single open question. The suggestions in the petition, and the separate affidavits, of course are of no effect. *Bolgiano vs. Cook,* 19 *Md.,* 396 ; *Story's Equity, secs.* 792, 794 ; *McGoon vs. Scales,* 9 *Wallace,* 30.

BRENT, J., delivered the opinion of the Court.

A motion has been made to dismiss the appeal in this case, upon the ground that it was taken after the time limited by law for appeals in equity.

The decree in the case was passed on the 23d day of November, 1855, and the appeal was taken on the 10th day of February, 1870. At this latter date the appellant, a few months after his arrival at age, filed under oath his petition for an appeal, alleging that the decree "was obtained by surprise and fraud which have only come to his knowledge since the 28th day of December, 1869." The proceedings in the case had been taken against him during his minority,—his appearance as defendant being by a guardian *ad litem,* duly appointed under a commision issued for that purpose.

The time, within which appeals are allowed from decrees and orders in equity, is regulated by the 20th section of Article 5 of the Code. It provides that all appeals shall be

taken within nine months from the time of making such decree or order and not afterwards, "*unless it shall be alleged on oath that such order was obtained by fraud or mistake.*" In the case of *Oliver vs. Palmer & Hamilton,* 11 *G. & J.,* 138, a similar provision in the 14th section of the Act of 1826, ch. 200, was construed to give the right of appeal at any time after the decree or order was passed, if the party praying it files an affidavit that the decree or order appealed from was obtained by fraud or mistake—with the limitation however that such appeal must be taken within nine months after the discovery of the fraud or mistake. Giving to the section in the Code the same construction, it is very clear that the appellant has brought himself within its exception. He has made oath that the decree was obtained by fraud, and that he had no knowledge of it until within less than two months before the appeal was prayed. The motion to dismiss must therefore be overruled.

The only effect of the allegation of fraud, in the petition of the appellant for an appeal, is to bring the case before us upon appeal. It opens no new question, and cannot present anything for our review and decision, which is outside of the record of the case as it was at the time the decree and orders appealed from were passed by the Court below. The case is before us like any other appeal taken in time, and is subject to the same laws and rules that regulate the hearing of appeals by this Court.

The objections urged at the argument on the part of the appellant, that the complainants had no standing in Court as against him; that it was immaterial to them whether it was for his interest or not that his land should be sold; that the bill was not filed by them, or either of them, as his guardian or *prochein ami,* and that it appears from the averments of the bill that the legacies were not due them by his co-defendant when their bill was filed, present questions of jurisdiction, and cannot be heard by this Court unless it appears by the record that such objections were made in the Court below.

As the record does not show any such objections, we are precluded from passing upon them by the very stringent language of section 27 of Article 5, of the Code. It provides that "no defendant to a suit in equity, in which an appeal may be taken, *shall make any objections to the jurisdiction of the Court below, unless it shall appear by the record that such objection was made in said Court.*"

The same is to be said in regard to the averments in the bill, the admissibility of evidence, and the objection to the auditor's report, which was finally ratified by the Court in August, 1864. Section 26 of Art. 5 of the Code, as amended and reënacted in 1861 by ch. 33, provides that "On an appeal from a Court of Equity no objection * * * to the admissibility of evidence or to the sufficiency of the averments of the bill or petition, or to any account stated and reported in said cause, shall be made in the Court of Appeals, unless it shall appear by the record that such objection has been made by exceptions filed in the Court from which such appeal shall have been taken."

The question of the sufficiency of evidence to support a decree is a question open before us. But the only evidence, which it has been argued, is insufficient in this case, is the evidence offered to show that the personal estate was inadequate for the payment of debts and legacies. The evidence upon this point is the certificate of the Register of Wills, under the seal of his office, which is to be treated by us as proof in the case inasmuch as there is no exception taken to it in the Court below. He states that the personal property is inadequate, and we cannot assume that he does not truly state the fact. Moreover the interest of this appellant in the land is not sought to be held liable for the legacies. They are charged as a lien upon the interest only of his co-defendant, William Ashton, who by his answer has admitted the personal estate was insufficient to pay them, and who had not taken an appeal from the decree below. The land of the appellant was not decreed to be sold for their payment, and it is not per-

ceived how the sufficiency of the evidence to establish these legacies as a charge upon William Ashton's life estate in the land, can be raised by the appellant upon this appeal.

The next objection, urged at the argument and now presented for the first time in the case, is, that the bill is multifarious. Where there is no objection to a bill upon this ground, raised either by demurrer, answer or plea, the Courts will sometimes *sua sponte* notice it at the hearing. But it must be a very strong case which will induce them to do it. If they can get to a final decree without serious embarrassment, so indisposed are they to countenance the objection, the error will generally be disregarded. If this is the rule with Courts of original jurisdiction, we can hardly suppose a case, in which the objection of multifariousness in a bill would, for the first time in the progress of a case, be entertained in an Appellate Court. Judge STORY, in the case of *Oliver, et al., vs. Piatt,* 3 *Howard,* states the rule very clearly. On page 412 he says: "The objection of multifariousness cannot, as a matter of right, be taken by the parties except by demurrer, or plea or answer; and if not so taken, it is deemed to be waived. It cannot be insisted upon by the parties even at the hearing in the Court below, although it may at any time be taken by the Court *sua sponte,* wherever it is deemed by the Court to be necessary or proper to assist it in the due administration of justice. And at so late a period as the hearing, so reluctant is the Court to countenance the objection, that, *if it can get on in the cause to a final decree without serious embarrassment,* it will do so, disregarding the fault or error, when it has been acquiesced in by the parties up to that time. *A fortiori* an Appellate Court would scarcely entertain the objection if it was not forced upon it by a moral necessity." Even if the bill in the present case would have been held upon demurrer to be multifarious, about which we express no opinion, it is now too late to urge the objection. It is certainly not multifarious to the extent of creating any serious embarrassment in the nature and character of the decree to be passed. It

asks for the sale of the life estate and remainder in the same land, upon the ground that it would be greatly to the advantage of all concerned, " that the whole should be sold and the proceeds distributed, under the direction of the Court, amongst the parties entitled." A decree of sale, such as was passed by the Court below, is easily arrived at upon proof of the allegations in the bill, and the proceeds arising from it readily distributed under the rules in chancery among those entitled.

Under the law as we find it, we are obliged to affirm the decree below.

> *Decree affirmed, but without prejudice to the right of the appellant to seek his remedy by other proceedings, at Law or in Equity.*

(Decided 20th March, 1872.)